FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 28, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRACY RAY E.,<br><br>                    Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | NO:  2:20-CV-00269-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

   BEFORE THE COURT are the parties' cross motions for summary judgment.

ECF Nos. 13 and 14.  This matter was submitted for consideration without oral

argument.  The Plaintiff is represented by Attorney David L. Lybbert.  The Defendant

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,

2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo

Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further

action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

is represented by Special Assistant United States Attorney Ryan Lu.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 13.

## JURISDICTION

Plaintiff Tracy Ray E.[2] filed for disability insurance benefits on September 1, 2017, and for supplemental security income on October 18, 2017, alleging an onset date of February 12, 2017, in both applications.  Tr. 181-92.  Benefits were denied initially, Tr. 117-20, and upon reconsideration, Tr. 123-28.  A hearing before an administrative law judge ("ALJ") was conducted on July 23, 2019.  Tr. 32-64.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 12-31, and the Appeals Council denied review.  Tr. 1.  The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

Plaintiff was 44 years old at the time of the hearing.  *See* Tr. 203.  He did some college courses during the relevant period, and was on the honor roll.  Tr. 38-39.  He lives with his wife, two young children, and three older children.  Tr. 40-41.  Plaintiff has work history as a cook, lubrication servicer, horticultural worker, brake operator, and exterminator.  Tr. 51-55.

Plaintiff testified that he had both of his hips replaced at the age of 38.  Tr. 41. He reported that he is able to sit for a maximum of one hour, stand for 10-15 minutes, "can't even walk a full block without taking a break," cannot lift his children, cannot crouch, can stoop and bend with pain, can lift and carry 10 pounds without aggravating his back or hip; and sleeps three to five hours a night.  Tr. 42, 47-48. Plaintiff also reported low back pain, depression, anxiety, difficulty with focus and concentration, and irritability.  Tr. 43-45. He spends three-quarters to seven-eighths of the day in a resting posture, elevates his legs three to four times a day for 30-45 minutes at a time; and at least twice a week he is unable to help with shopping or excursions with his family.  Tr. 45-46.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

1  mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

2  citation omitted).  Stated differently, substantial evidence equates to "more than a

3  mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).

4  In determining whether the standard has been satisfied, a reviewing court must

5  consider the entire record as a whole rather than searching for supporting evidence in

6  isolation. *Id.*

7         In reviewing a denial of benefits, a district court may not substitute its

8  judgment for that of the Commissioner.  If the evidence in the record "is susceptible

9  to more than one rational interpretation, [the court] must uphold the ALJ's findings if

10  they are supported by inferences reasonably drawn from the record." *Molina v.*

11  *Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not

12  reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is

13  harmless "where it is inconsequential to the [ALJ's] ultimate nondisability

14  determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the

15  ALJ's decision generally bears the burden of establishing that it was harmed.

16  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

18         A claimant must satisfy two conditions to be considered "disabled" within the

19  meaning of the Social Security Act.  First, the claimant must be "unable to engage in

20  any substantial gainful activity by reason of any medically determinable physical or

21  mental impairment which can be expected to result in death or which has lasted or

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine

whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-

(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is

engaged in "substantial gainful activity," the Commissioner must find that the

claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work activities,"

the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the

claimant's impairment does not satisfy this severity threshold, however, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c),

416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20

C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the

Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v.*
*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the

burden shifts to the Commissioner to establish that (1) the claimant is capable of

performing other work; and (2) such work "exists in significant numbers in the

national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*,
700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

activity since February 12, 2017, the alleged onset date.  Tr. 17.  At step two, the ALJ

found that Plaintiff has the following severe impairments: bilateral hip replacements

in 2013 currently with loose hardware of the left hip, diabetes, chronic kidney

disease, and obesity.  Tr. 17.  At step three, the ALJ found that Plaintiff does not have

an impairment or combination of impairments that meets or medically equals the

severity of a listed impairment.  Tr. 19.  The ALJ then found that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can lift and/or carry up to 10 pounds frequently; he can stand or walk for approximately 2 hours and sit for approximately 6 hours per workday with normal breaks; he can occasionally climb ramps or stairs; he can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, and crouch; he can never crawl; he must avoid concentrated exposure to excessive vibration and workplace hazards such as working with dangerous machinery and working at unprotected heights.

Tr. 19.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 24.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: elections clerk, document preparer, and callout operator.  Tr. 25.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 12, 2017, through the date of this decision.  Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred at step two;

2. Whether the ALJ erred at step three;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

3. Whether the ALJ properly considered Plaintiff's symptom claims; and

4. Whether the ALJ properly considered the medical opinion evidence.

**DISCUSSION**

**A. Step Two**

To be considered "severe" at step two of the sequential analysis, an impairment must significantly limit an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir.1996).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"  *Id.* at 1290.   Plaintiff bears the burden to establish the existence of a severe impairment or combination of impairments, which prevent him from performing substantial gainful activity, and that the impairment or combination of impairments lasted for at least twelve continuous months.  20 C.F.R. §§ 404.1505, 404.1512(a); *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2011).  However, step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

1    Here, the ALJ resolved step two in Plaintiff's favor, finding Plaintiff has the

2    following severe impairments: bilateral hip replacements in 2013 currently with loose

3    hardware of the left hip, diabetes, chronic kidney disease, and obesity.  Tr. 17.

4    Despite this finding, Plaintiff generally argues that the ALJ erred by concluding that

5    Plaintiff's depression and lumbar back pain were not severe impairments.  This

6    argument is unavailing for several reasons.  First, as to his alleged mental health

7    impairments, Plaintiff fails to address the ALJ's specific assessment of the areas of

8    Plaintiff's mental functioning known as the "paragraph B" criteria, which included

9    findings of no limitation in understanding, remember, or applying information; no

10   limitation in interacting with others; mild limitation in concentrating, persisting, or

11   maintaining pace; and no limitation in adapting or managing himself.  Tr. 18-19; *see*

12   *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)

13   (court may decline to address issue not raised with specificity in Plaintiff's briefing).

14   Second, Plaintiff generally cites mental status examination findings that found

15   he was disheveled/unkempt, had flat affect, had poor perception and memory, and

16   had depressed mood.  ECF No. 13 at 15-16 (citing Tr. 770, 787, 810, 822, 827, 834,

17   836, 839, 841, 845, 851, 861).  However, the Court notes these same mental status

18   examinations consistently noted appropriate behavior and good memory; and both the

19   clinician and Plaintiff repeatedly reported making progress toward their goals. *See id*.

20   Moreover, the ALJ specifically found that Plaintiff's mental health complaints were

21   "out of proportion to the objective medical evidence of record," and in support of this

finding the ALJ cited evidence of mild mental status examination findings by Dr. Genthe, frequent denials of depression and "negative" findings for depression, and findings of normal/intact mood and affect during medical visits.  Tr. 18, 341, 357, 415, 421, 425-26, 430, 440-41, 452, 507, 591, 630, 635, 769-70, 775.  Thus, regardless of evidence that could be considered more favorable to Plaintiff, the ALJ's finding that Plaintiff's claimed mental impairment were non-severe was supported by substantial evidence.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

In addition, the ALJ found that Plaintiff's alleged back pain caused no more than minimal impact on basic work activities. Tr. 18.  In support of this finding, the ALJ cited a June 2018 MRI of the lumbar spine that showed multilevel degenerative disc disease, physical therapy notes indicating that Plaintiff's symptoms are more consistent with hip pathology rather than lumbar spine, and physical examinations indicating negative straight leg raise tests and normal neurological examination findings.  Tr. 18 (citing Tr. 690, 701, 710-11, 716, 743-44, 879, 902, 908).  Plaintiff argues the ALJ "reversibly erred" by finding his back pain was not a severe impairment at step two, and cited evidence that (1) the June 2018 MRI results also showed moderate-severe degeneration of the facets at L4-5, severe facet degeneration at L5-S1, and moderate spinal stenosis; and (2) a 2018 treatment note included findings of diminished range of motion and "mild" tenderness to palpation in left SI

joint.  ECF No. 13 at 176-17 (citing Tr. 701-03).  However, the Court's review of the same records from June 2018 also indicate that Plaintiff had no significant tenderness in his lumbar spine, and the MRI results indicated no acute abnormality, no definite impingement upon the traversing nerve roots, and slight/mild impingement upon nerve roots.  Tr. 702-03.  Thus, as above, despite evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find Plaintiff's back pain was not a severe impairment at step two.  *See Burch*, 400 F.3d at 679.

Finally, even assuming, *arguendo*, that the ALJ erred in finding that Plaintiff's back pain and mental health impairments were non-severe, any error is harmless because Plaintiff fails to identify how these alleged impairments result in limitations beyond those included in the assessed RFC.  *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four); *see also Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination).  As discussed below, the ALJ properly weighed the opinion evidence and Plaintiff's symptom claims; and as a result, the RFC incorporated the limitations supported by substantial evidence in the record.  The Court finds no error at step two.

**B. Step Three**

At step three of the sequential evaluation of disability, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. §§

416.920(a)(4)(iii), 404.1520(a)(4)(iii).  The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. §§ 416.925, 404.1525.  To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim.  20 C.F.R. §§ 416.925(d), 404.1525(d).  If a claimant meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii).  The claimant bears the burden of establishing he meets a Listing.  *Burch*, 400 F.3d at 683.

Each Listing sets forth the "symptoms, signs, and laboratory findings" that must be established in order for claimant's impairment to meet the Listing.  *Tackett,* 180 F.3d at 1099.  "For a claimant to show that his impairment matches a Listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original).  Here, the criteria for Listing 1.02A "major dysfunction of a joint" are satisfied when there is evidence of "a gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)," with "[i]nvolvement of one major peripheral weight-bearing joint

1  (i.e. hip, knee, or ankle), resulting in an inability to ambulate effectively." *See* 20

2  C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A.

3      The ALJ found that "the record does not establish the medical signs,

4  symptoms, laboratory findings or degree of functional limitation required to meet or

5  equal the criteria of" Listing 1.02 "major dysfunction of a joint." Tr. 19. Plaintiff

6  argues that the ALJ erred at step 3 by failing to properly assess whether he met or

7  equaled Listing 1.02 for major dysfunction of a weight-bearing joint. ECF No. 13 at

8  17-19. In support of this argument, Plaintiff generally references several diagnostic

9  studies that indicate loosening of his hip replacement hardware, causing "instability

10 within both of his major weight bearing joints, the condition being worse on the left

11 side. His records are replete with complaints of chronic joint pain in both hips, left

12 worse than right." ECF No. 13 at 18. Plaintiff also cites two April 2017 treatment

13 notes indicating painful range of motion in his left hip, loss of motor strength,

14 tenderness, and loosening of his hip prosthesis causing pain and difficulty walking; a

15 December 2017 treatment note indicating reduced range of motion and tenderness; a

16 May 2018 treatment note indicating decreased range of motion and motor strength;

17 and a June 2018 treatment note observing antalgic gait, positive Faber and Fair tests,

18 and weakness in the left leg. ECF No. 13 at 18-19 (citing Tr. 300, 312, 507, 689,

19 701).

20      "A boilerplate finding is insufficient to support a conclusion that a claimant's

21 impairment does not" meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d

503, 512 (9th Cir. 2001).  An ALJ must make specific findings regarding why a

plaintiff does not meet all the Listing requirements.  *See id.* at 512–13.  However,

even if an ALJ makes a boilerplate finding that an impairment does not meet a

Listing, this Court will not reverse where the ALJ made sufficiently detailed findings

in other portions of her decision.  *See Lewis,* 236 F.3d at  513.  Moreover, where a

Listing has multiple requirements that an impairment must satisfy, even if an ALJ

does not make findings about each Listing requirement, the ALJ's decision is

sufficiently specific if the ALJ discussed and evaluated evidence that one of the

requirements was not met.  *See id.*  Here, as noted by Defendant, in order to meet

Listing 1.02, "Plaintiff had to demonstrate, among other requirements, that his

impairments resulted in 'an inability to ambulate effectively.'"  20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 1.02A.  "Ineffective ambulation is defined generally as having

insufficient lower extremity functioning . . .  to permit ambulation without the use of

a hand-held assistive device(s) that limits the functioning of both upper extremities."

20 C.F.R. Part 404, Subpt P, App. 1, 1.00(B)(2)(b)(1). "Examples of ineffective

ambulation include, but are not limited to, the inability to walk without the use of a

walker, two crutches or two canes, the inability to walk a block at a reasonable pace

on rough or uneven surfaces, [or] the inability to carry out routine ambulatory

activities, such as shopping and banking[.]"  *Id*. at 1.00(B)(2)(b)(2).

In his reply brief, Plaintiff cites his testimony that he could not walk a full

block without resting and opinion evidence assessing marked limitations in Plaintiff's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

ability to walk and stand.  ECF No. 15 at 7; Tr. 42, 46, 508, 777.  However, as discussed below, the ALJ properly concluded that the opinion evidence was not persuasive, and discounted Plaintiff's symptom claims.  Additionally, the record fails to show that Plaintiff's ambulation required the use of a hand-held assistive device that limited functioning of both upper extremities; nor does it include evidence, aside from Plaintiff's own testimony, that he was unable to walk a block at a reasonable pace.  Rather, as noted by the ALJ in the decision, the record demonstrates that while he was noted to have an antalgic gait, Plaintiff was capable of ambulating effectively without aids.  *See* Tr. 21, 300 (noting Plaintiff can bear weight on the injured extremity), 701 (5/5 leg strength), 777 (opining Plaintiff could walk for 1 hour out of an 8-hour workday), 775 (orthopedic surgeon noting that Plaintiff may need "more of a light sedentary job," but at his age, "a painful hip replacement should not merit Social Security").  Finally, as indicated in the ALJ's decision, Plaintiff was able to care for his wife and family when she had a difficult pregnancy, take classes that required him to sit and walk around a campus, play in a heavy metal band, drive, and do things around the house.  Tr. 22-23, 333, 432, 615, 633, 794, 807, 845, 899. Based on the foregoing, Plaintiff fails to show error in the ALJ's conclusion that his impairments did not meet or medically equal Listing 1.02A.

## C. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine whether

there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

1    Here, the ALJ found Plaintiff's medically determinable impairments could

2    reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's

3    "statements concerning the intensity, persistence and limiting effects of these

4    symptoms are not entirely consistent with the medical evidence and other evidence in

5    the record" for several reasons.  Tr. 20.  First, the ALJ found that Plaintiff "testified

6    to minimal daily activities including spending ¾ of his day resting as well as having

7    his wife take care of him and their children.  However, the record indicates he is more

8    functional than alleged."  Tr. 22.  A claimant need not be utterly incapacitated in

9    order to be eligible for benefits.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989);

10    *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a

11    plaintiff has carried on certain activities . . . does not in any way detract from her

12    credibility as to her overall disability.").  Regardless, even where daily activities

13    "suggest some difficulty functioning, they may be grounds for discrediting the

14    [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating

15    impairment."  *Molina*, 674 F.3d at 1113.

16    In support of this finding, the ALJ cited Plaintiff's reports that he was "hoping

17    to find a job soon" in March 2017, and he was "going away with a friend for a couple

18    days to the beach."  Tr. 22, 418.  The record also contains evidence, as cited by the

19    ALJ, that Plaintiff was voluntarily postponing his hip surgery "in order to be able to

20    care for his wife and family"; he attended "retraining" courses that required him to do

21    "a lot of sitting and walking around [a college] campus"; he consistently reported that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

he was able to play guitar in a band despite his physical limitations; and he was able to do things around the house.  Tr. 22-23, 333 (plays in a heavy metal band), 432 (postponed surgery to care for his wife and family, and plays in heavy metal band), 615 (despite difficulty walking, he is taking classes that require him to "do quite a bit of sitting and walking around campus"), 633 (he has been in school for a while, and he put off his revision surgery because his wife "needed him as a caregiver and for transportation"), 794 (able to play music even with his physical limitations), 807 (was playing with his band), 845 (enjoys playing music and socializing with his band), 899 (he is able to do things around the house).

Plaintiff generally argues that the ALJ "improperly discredited" the Plaintiff because "[t]here are not findings of the amount of time devoted to such activities nor the strength demands or mental demands," and "[n]one of these activities take up a substantial portion of his day or indicate transferability to a work environment where there is no opportunity to take breaks for rest and medication."  ECF No. 13 at 13. However, the Court finds it was reasonable for the ALJ to conclude that Plaintiff's documented activities, including taking care of his wife and young children, attending classes as part of job retraining, and playing guitar in a band, was inconsistent with his allegations of debilitating functional limitations. *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating

impairment).  This was a clear and convincing reason to discredit Plaintiff's symptom claims.

In addition, the ALJ found that Plaintiff's claimed physical limitations were inconsistent with medical evidence, including evidence that Plaintiff's medication was helping him improve his functioning.  Tr. 20-23.  The Court may decline to address issues not raised with specificity in Plaintiff's opening brief.  *Carmickle*, 533 F.3d at 1161 n.2; *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).  Despite Plaintiff's waiver, the Court will briefly review the additional reasons given by the ALJ to discount Plaintiff's symptom claims.

The ALJ found that Plaintiff has some physical limitations, but those limitations do not preclude all work activity; and the ALJ noted improvement in Plaintiff's diabetes and hip pain with medication compliance.  Tr. 21-23.  In support of this finding, the ALJ set out medical evidence, including x-rays showing normal alignment and no fracture of left hip, ability to bear weight on his hip, lack of assistive device, unrestricted hip range of motion but with pain at endpoint, 5/5 strength in lower extremities, normal alignment and no fracture in his hip, and normal neurological examination findings.  Tr. 21-22, 297-300, 650 (negative straight leg test), 665, 686 (noting x-rays of left hip look "improved"), 688-89, 692, 695-96, 701, 746, 775, 879, 884.  The ALJ also relied on consistent reports from Plaintiff throughout the relevant adjudicatory period that his function was improved with

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 20

medication compliance.  Tr. 22-23, 314, 317, 324, 343, 413, 418, 423, 498, 879, 903.

An ALJ may not discredit a claimant's pain testimony and deny benefits solely

because the degree of pain alleged is not supported by objective medical evidence.

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947

F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical

evidence is a relevant ant factor in determining the severity of a claimant's pain and

its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  In

addition, a favorable response to treatment can undermine a claimant's complaints of

debilitating pain or other severe limitations.  *See Tommasetti v. Astrue*, 533 F.3d

1035, 1040 (9th Cir. 2008); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,

1006 (9th Cir. 2006) (conditions effectively controlled with medication are not

disabling for purposes of determining eligibility for benefits).  The lack of

corroboration of Plaintiff's claimed limitations by the medical evidence, including

evidence of improvement with medication, was a clear, convincing, and unchallenged

reason for the ALJ to discount Plaintiff's symptom claims.

     The Court concludes that the ALJ provided clear and convincing reasons,

supported by substantial evidence, for rejecting Plaintiff's symptom claims.

### D. Medical Opinions

     For claims filed on or after March 27, 2017, new regulations apply that change

the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to*

*Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed.

Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . .to any medical opinion(s) . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and, therefore, the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical

finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Plaintiff argues the ALJ erroneously considered the opinions of Allen Noble, P.A.C. and Michael Tolley, M.D.[3]  ECF No. 13 at 7-10.  In April 2017, Mr. Noble

---

[3] In his opening brief, Plaintiff generally argues that the ALJ improperly assessed the RFC, and therefore posed an incomplete hypothetical to the vocational expert, because she failed to consider the marked limitations assessed by Thomas Genthe, Ph.D.  ECF No. 13 at 14 (citing Tr.768). However, Plaintiff fails to identify or challenge any of the ALJ's reasons for finding Dr. Genthe's opinion only somewhat persuasive; thus, the Court declines to consider this issue.  *See Carmickle*, 533 F.3d at 1161 n.2.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23

wrote a letter indicating that Plaintiff had worsening pain in his left thigh, a bone scan

showed loosening of the prosthesis in the femur that was causing pain and difficulty

walking, and "[h]e would benefit from any assistance that DSHS could provide given

his ability to work currently with his medical condition is very limited." Tr. 312.

Mr. Noble also opined that Plaintiff's "workability would be sedentary or very

limited." Tr. 312. In December 2017, Mr. Noble and Dr. Tolley jointly opined that

Plaintiff had "marked" limitations in his ability to sit, stand, walk, lift, and carry; and

his "overall work level" was sedentary. Tr. 508. In June 2018, Mr. Noble wrote a

single sentence letter opining that Plaintiff was able to work 15-20 hours without

heaving lifting or frequent walking/standing. Tr. 764. And in June 2019, Mr. Noble

opined that Plaintiff was able to sit for 3-4 hours in an 8-hour workday; stand for 1

hour in an 8-hour workday; walk for 1 hour in an 8-hour workday; occasionally lift

up to 10 pounds; seldom carry up to 5 pounds and "never" carry more; and never

stoop, squat, crawl, climb, or push foot controls. Tr. 777-78. Finally, Mr. Noble

"agreed" that Plaintiff would need more than the scheduled breaks of 10 minutes or

more throughout the day, was likely to miss or work or leave early at least 2-3

months due to flare-ups of symptoms, and was unlikely to tolerate production level

sorting, assembly, or inspection. Tr. 779.

The ALJ found Mr. Noble's opinions "minimally persuasive" for several

reasons. Tr. 23. As an initial matter, Plaintiff argues that Mr. Noble and Dr. Tolley

"were treating doctors and their opinions are entitled to substantial weight. If not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24

contradicted in the record, the opinion is entitled to controlling weight when

supported by substantial evidence." ECF No. 13 at 9 (citing SSR 96-2). Plaintiff

also generally argues that the ALJ's reasons are "insufficient" because "she notes that

she finds the statements of [Mr.] Noble are 'minimally persuasive' yet elects to

ignore them as she believes that they are inconsistent with medical evidence and the

[Plaintiff's] guitar playing." ECF No. 13 at 8. Plaintiff's argument is inapposite. As

noted by Defendant, "[b]ecause Plaintiff applied for benefits after March 27, 2017,

the ALJ correctly applied [the] new regulations in evaluating the medical opinion

evidence in this case." ECF No. 14 at 9. The new regulations provide that the ALJ

will no longer "give any specific evidentiary weight . . . to any medical

opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68;

*see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and

evaluate the persuasiveness of all medical opinions or prior administrative medical

findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and

(b). In particular, supportability and consistency are the most important factors; and

therefore, the ALJ is required to explain how both factors were considered. 20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Court may decline to consider this issue because Plaintiff fails to raise any

specific challenge to the ALJ's consideration of the medical opinion evidence under

the new regulations. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to

address issue not raised with specificity in Plaintiff's briefing). Nonetheless, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 25

Court additionally notes that the ALJ properly considered Mr. Noble's and Dr. Tolley's opinions.  Tr. 23.  As to Mr. Noble's opinion, the ALJ considered supportability and consistency and found that (1) his opinion referenced a previous bone scan showing loosening of Plaintiff's hip hardware, but examination notes also observe full strength of the lower extremities and uses no assistive device for ambulation; (2) Mr. Noble's "extreme assessments" of only "seldom" carrying five pounds and other manipulative limitations are inconsistent with medical evidence and Plaintiff's ability to play guitar; and (3) the assessed limitations are inconsistent with evidence that Plaintiff has "remained quite functional despite his hip impairment" including driving, caring for his wife and family, and playing guitar in a band.  Tr. 23.

In addition, the ALJ separately considered the December 2017 opinion co-signed by Mr. Noble and Dr. Tolley, and found it "persuasive to the extent that it is consistent with a limitation to sedentary exertion."  Tr. 23, 508.  However, as to the general assessment that Plaintiff has "difficulties lifting, carrying, standing, bending, squatting, sitting for prolonged periods, standing for prolonged periods, walking for prolonged periods, etc.," the ALJ correctly found that Mr. Noble and Dr. Tolley "did not quantify these limitations which undercuts the reliability of their opinion." Tr. 23. *See, e.g., Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide . . . for rejecting [the]

report because the ALJ did not reject any of [the report's] conclusions").  Moreover, the ALJ noted that Plaintiff's activities of daily living including driving, attending classes, and caring for his wife and children, were inconsistent with the severity of the assessed limitations.  Tr. 23.

Plaintiff generally cites treatment notes indicating difficulty with weight bearing, decreased strength in lower extremities, loss of range of motion in his back and loss of hip flexor strength, and positive Faber and Fair testing of his hips bilaterally.  ECF No. 13 at 8 (citing Tr. 689, 701).  However, as noted above, Plaintiff fails to assert any challenge to the ALJ's findings under the new regulations.  *See Carmickle*, 533 F.3d at 1161 n.2.  Moreover, regardless of evidence in the overall record that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find Mr. Noble and Dr. Tolley's opinions were unsupported and inconsistent with the longitudinal record, and therefore only minimally persuasive. *See Burch*, 400 F.3d at 679.  Based on the foregoing, the Court finds no error in the ALJ's consideration of the medical opinion evidence.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly considered step  two and step three, provided clear and convincing reasons to discount Plaintiff's symptom claims,

1  and properly considered the medical opinion evidence.  After review the court finds

2  the ALJ's decision is supported by substantial evidence and free of harmful legal

3  error.

4      Accordingly, **IT IS HEREBY ORDERED**:

5      1.  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

6      2.  Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

7      **IT IS SO ORDERED**.  The District Court Executive is hereby directed to

8  enter this Order and provide copies to counsel, enter judgment in favor of the

9  Defendant, and **CLOSE** the file.

10      **DATED** September 28, 2021.

11

12          *s/ Rosanna Malouf Peterson*
            ROSANNA MALOUF PETERSON
13            United States District Judge

14

15

16

17

18

19

20

21

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 28